**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**CENTRAL DIVISION**
**LEXINGTON**

| | |
|---|---|
| **UNITED STATES OF AMERICA,** ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 5:22-mj-05138-MAS-1 |
| v. ) | |
| ) | |
| **ROLLIE DESHAWN LAMAR,** ) | |
| ) | |
| Defendant. ) | |

**RELEASE OPINION AND ORDER**

The Complaint alleges that Defendant Rollie Deshawn Lamar ("Lamar") conspired to distribute an unspecified quantity of marijuana in violation of 21 U.S.C. § 846. [DE 1 (Complaint)].[1] The Court confronts the Government's motion for pretrial detention in this case pursuant to 18 U.S.C. § 3142(f)(2)(B). As discussed below, the Court decides only whether the record demonstrates by clear and convincing evidence that no combination of conditions will reasonably assure that Lamar does not endanger any other person or the community by obstructing or attempting to obstruct justice. The Court finds that the Bail Reform Act ("BRA") and pertinent case law require Lamar's release in this specific posture and on the present record.

### I. RELEVANT BACKGROUND

At Lamar's initial appearance, Lamar waived his right to a preliminary hearing, and the Government sought detention based upon a general danger theory. Shortly after the hearing's

---

[1] Though the Affidavit references a quantity estimate (above 50 kilograms) largely deduced by comparing the cash seizure totals with the suspected street drug prices [*see* DE 1-1 at Page ID # 10], the offense alleged on the face of the Complaint does not include a statutorily aggravated drug quantity.

1

conclusion (and on that same date), the Court briefly reconvened the parties and counsel to clarify the Government's statutory basis for its detention motion. The United States invoked 18 U.S.C. § 3142(f)(2)(B) and, because it produced some evidence indicating a serious risk that Lamar would obstruct or attempt to obstruct justice if released, the Court found that it was entitled to request a detention hearing on that basis. [DE 5].

The Court conducted a detention hearing in this case on April 20, 2022. [DE 8]. At the outset, the Court stated its belief that persuasive authority limited the instant detention analysis to only § 3142(f)(2)(B) obstruction bases and expressed intent to cabin the hearing accordingly. Although the Government maintained that the evidentiary scope should be more expansive, it tailored its presentation of proof during the hearing to its § 3142(f)(2)(B) arguments. The parties likewise disagreed as to the applicable standard of proof in (f)(2)(B) cases.

After hearing all evidence and factual arguments, the Court directed expedited supplemental briefing on two critical legal issues: (1) whether the scope of a detention hearing requested and held under § 3142(f)(2)(B) is limited to facts and argument supporting detention on that basis; and (2) whether the United States must prove the facts in support of its (f)(2)(B) theory by clear and convincing evidence or by some other quantum of evidence. Both sides filed supplemental briefs.

Before turning to the ultimate issue of pretrial detention, the Court must first address these two legal issues.

## II.  LEGAL FRAMEWORK

A.  SCOPE OF DETENTION DETERMINATION

The Court first must discern the proper bounds of a detention hearing held "upon motion of the attorney for the Government . . . in a case that involves . . . a serious risk that such person will obstruct or attempt to obstruct justice[.]"  18 U.S.C. § 3142(f)(2)(B).[2]

The Government argues that, even when a hearing is solely triggered by (f)(2)(B), it may present evidence of a defendant's dangerousness beyond any obstruction risk—such as evidence that Lamar may engage in drug trafficking upon release.  The United States contends that subsection (e) permits the Court to examine all risks of flights and danger regardless of the subsection (f) basis for detention.

Lamar, in turn, asserts that an (f)(2)(B) hearing and the corresponding detention determination are limited to assessment of the specific danger risks outlined in that subsection. Per Lamar, the Government's reading defeats the entire purpose and structure of subsection (f).

After review of the text of the BRA, its legislative history, and persuasive case law interpreting the statutory scheme, the Court agrees with Lamar's position.

### 1.  **Plain Language of the BRA**

The Court begins its analysis with the BRA's plain language and structure, giving each phrase full effect and reading "no clause, sentence, or word of [the] statute . . . as superfluous, void, or insignificant" in the process.  *United States v. Bedford*, 914 F.3d 422, 427 (6th Cir. 2019) (quoting *In re City of Detroit*, 841 F.3d 684, 696–97 (6th Cir. 2016) (internal quotation marks and citation omitted)).

---

[2] The United States did not argue or provide any evidence that Defendant would "threaten, injure, or intimidate, or attempt to threaten, injure, or intimidate, a prospective witness or juror[,]" as the remainder of the subsection provides.  18 U.S.C. § 3142(f)(2)(B).

3

To start, subsection (f) strictly limits the cases in which the Government can request a detention hearing.[3] *See, e.g.*, *United States v. DeGrave*, 539 F. Supp. 3d 184, 201 (D.D.C. 2021); *United States v. White*, No. 3:21-MJ-04070, 2021 WL 2155441, at *5 (M.D. Tenn. May 27, 2021) (discussing the two-step process at length and concluding that under Sixth Circuit law "if [subsection (f)] circumstances are not present, a detention hearing (and, thus, detention) is simply unauthorized, regardless of how the Government would fare with respect to risk of non-appearance and danger to other persons or the community"). Under (f)(1), the Government can move for pretrial detention in cases involving specified offenses.[4] *See* 18 U.S.C. § 3142(f)(1)(A)-(E). Under subsection (f)(2), either the Government or the Court can move for pretrial detention in cases involving a serious risk of flight or a serious risk of obstruction, witness tampering, or juror intimidation. *See* 18 U.S.C. § 3142(f)(2)(A) and (B). Upon finding that the Government has grounds to seek pretrial detention under (f), the Court then turns to (e) where detention is mandated "[i]f . . . [the] judicial officer finds that no condition or combination of conditions will reasonably

---

[3] The BRA charts four outcomes mandating that the Court "shall issue an order that, pending trial," the Defendant be: (1) released on personal recognizance or an unsecured bond under § 3142(b); (2) released on conditions under § 3142(c); (3) temporarily detained for purposes not at issue here under § 3142(d); or (4) detained pretrial under § 3142(e). 18 U.S.C. § 3142(a)(1)-(4). If the Government is seeking pretrial detention, then Section 3142(e) requires as a predicate that the Court conduct "a hearing pursuant to the provisions of subsection (f)[.]" *Id.* § 3142(e)(1).

[4] Specified offenses include crimes of violence, certain felonies involving minor victims or firearms, and high-penalty controlled substance offenses, among others. The Government never sought to amend its basis for detention to include any subsection (f)(1) basis, such as whether enhanced penalties may be used for purposes of determining whether an offense reaches a certain maximum triggering a hearing under (f)(1) if the defendant has a qualifying prior. *See United States v. Barnett*, 2003 WL 22143710 (N.D. New York Sept. 17, 2003). Nor did it raise whether factual conduct involving a firearm could trigger a hearing under (f)(1)(E) despite no weapon being charged in connection with the offense. *See*, *e.g.*, *United States v. Watkins*, 940 F.3d 152, 165–67 (2d Cir. 2019) (interpreting the (f)(1)(E) text as reaching factually involved but uncharged conduct covered by the subsection).

assure the appearance of the [defendant] as required and the safety of any other person and the community". 18 U.S.C. § 3142(e)(1).

The issue before the Court here is whether the basis for the detention hearing under (f) consequently limits the analysis under (e). Again, the Government's position is that any basis under subsection (f) opens the door as broadly as possible to any danger and flight considerations. The Court disagrees. Given subsection (f)'s limiting language regarding when pretrial detention is even available, it is appropriate to likewise construe subsection (e) narrowly. The Government's approach would heavily dilute the explicit, restrictive value of subsection (f) and its limited categories rendering subsection (f) superfluous. *See United States v. Malone*, 889 F.3d 310, 312 (6th Cir. 2018) (reiterating the "cardinal principle" that courts should avoid interpretations of a statute that would render a portion of it insignificant or superfluous); *see also United States v. Schwamborn*, No. CR060328SJFAKT, 2007 WL 9653331, at *10 (E.D.N.Y. June 29, 2007), *report and recommendation adopted*, No. 06-CR-328 (SJF), 2007 WL 9653332 (E.D.N.Y. July 27, 2007), *aff'd*, 249 F. App'x 906 (2d Cir. 2007) (quoting *United States v. Leon*, 766 F.2d 77, 81 (2d Cir. 1985)) ("Obstruction of justice has been held to be an 'alternate ground for detention,' distinct from 'risk of flight and safety to the community.'").

The plain language of the BRA supports the narrowest reading of subsection (f) and, by consequence, subsection (e).

### 2.     Legislative History of the BRA

The legislative history likewise confirms Congress's intent that subsection (f) should carefully circumscribe the universe of cases in which the United States could seek, and courts could make, pretrial detention decisions.

The district court in *United States v. LaLonde* fully examined the legislative history of the BRA relevant to this very context. 246 F. Supp. 2d 873 (S.D. Ohio 2003). The court cited the following quote from the legislative history: "[T]he requisite circumstances for invoking a detention hearing in effect serve to limit the types of cases in which detention may be ordered prior to trial." *Id*. at 875 (quoting S. Rep. No. 225, 98th Cong., 1st Sess. 20, *as reprinted in* U.S. Code Cong. & Admin. News 1984, p. 3203). Based upon this statement, *LaLonde* held that, "[t]o the extent that the statute fails to be explicit in limiting detention to the cases identified in § 3142(f), the legislative history makes clear that Congress intended for the statute to do so. The Court resolves any latent ambiguity or uncertainty in the language of the statute in favor of the meaning Congress plainly intended." *Id*.

The overall congressional record adds to the quote cited by *LaLonde*. 131 Cong. Rec. S00000-12, 1985 WL 707152. There, the statements from senators indicate that the role of (f)(1) is to outline specific "categor[ies] of prosecutions for which pretrial detention on grounds of dangerousness would be authorized". *Id*. at 51. As for (f)(2), the statements explain that (f)(2) simply expands those categories for the limited purpose of preserving the "inherent right of the trial court to protect the integrity of the judicial process" in cases specifically involving serious flight or obstruction risks. *Id*. at 53.

If Congress explicitly and repeatedly emphasized the limited means by which the Government may seek detention, any effort to negate the effect of subsection (f) via subsection (e) seems misplaced. When taking the plain language together with the full context of the BRA's legislative history, the narrowest reading of subsections (e) and (f) is only further supported. To the extent ambiguity remains, the rule of lenity further supports such a reading in this context. *See United States v. Miller*, 734 F.3d 530, 540 (6th Cir. 2013) (quoting *United States v. Choice*, 201

F.3d 837, 840 (6th Cir. 2000) ("If the statute remains ambiguous after consideration of its plain meaning, structure, and legislative history, we apply the rule of lenity in favor of criminal defendants.").

### 3. Precedent Addressing the Issue

Though the Sixth Circuit has not squarely addressed the issue, the bulk of circuit and district courts have construed subsections (e) and (f) narrowly. *See, e.g.*, *United States v. Himler*, 797 F.2d 156, 160 (3d Cir. 1986) (reversing the trial court's consideration of overall danger considerations when the detention basis was limited to subsection (f)(2)(A)'s risk of flight issue); *United States v. Ploof*, 851 F.2d 7, 11 (1st Cir. 1988); *United States v. Friedman*, 837 F.2d 48 (2d Cir. 1988); *United States v. Okhumale*, 813 F. App'x 936, 939 (5th Cir. 2020) (concluding that any request for detention under (f)(2) must be limited to an analysis under those provisions); *LaLonde*, 246 F. Supp. 2d at 875; *United States v. Demmler*, 523 F. Supp. 2d 677 (S.D. Ohio 2007) ("*Demmler II*") ("This provision plainly requires consideration of the defendant's dangerousness, but focuses that inquiry not on the general risk of harm that he may pose to society, but on whether he will seek to subvert justice, through violent means or not. The Court therefore evaluates Demmler's dangerousness through the prism of § 3142(f)(2)."); *United States v. Medoza-Balleza*, 420 F. Sup. 3d 716 (E.D. Tenn. 2019).

Additionally, although without any deep analysis, this Court has previously limited detention motions made under subsection (f)(2) to the limited bases for such a motion. *See, e.g.*, *United States v. Curry*, No. 6:06-cr-82-DCR, 2006 WL 2037406, at *6 (E.D. Ky. July 18, 2006); *United States v. Conn*, No. 5:16-cr-22-DCR, 2016 WL 8488238 (E.D. Ky. April 12, 2016); *United States v. Taylor*, 449 F. Supp. 3d 668, 671 (E.D. Ky. 2020); *United States v. Comberger*, No. 5:21-MJ-05138-MAS, 2021 WL 1725516, at *1 (E.D. Ky. Apr. 30, 2021).

Ultimately, the Court has not found reasoned, persuasive support for a contrary interpretation of subsection (f) in the case law.[5] Based on the statute itself, the legislative intent behind it, and a survey of other courts' approaches, the Court concludes that the detention hearing scope in this case was properly limited to evidence and argument concerning the specific danger that Defendant would pose a serious risk of obstructing or attempting to obstruct justice in this case if released.

B. **EVIDENTIARY STANDARD**

Next, the Court must examine what evidentiary burden applies. At the hearing, the parties disagreed as to the burden.[6] Per the supplemental briefing, however, the parties agree that the risk

---

[5] The Middle District of Tennessee suggested, without analysis, that the Government, "could have asserted danger to other persons or the community as an alternative basis to detain Defendant even without having grounded its motion for detention on that basis[.]" *United States v. White*, No. 3:21-MJ-04070, 2021 WL 2155441, at *1 (M.D. Tenn. May 27, 2021). In support, the court cited this Court's decision in *Comberger*, 2021 WL 1725516, at *1 (E.D. Ky. Apr. 30, 2021), as standing for the proposition that § 3142(f) outlines preliminary showings to trigger a hearing but that, ultimately § 3142(e) turns on the overarching nonappearance and danger to the community considerations there identified. Indeed, this Court in *Comberger* cited to an earlier Southern District of Ohio decision in the *Demmler* case ("*Demmler I*") that stated: "Detention may be ordered based upon a finding that the defendant is likely to continue to engage in criminal activity which poses a threat either to the community or to the safety of particular persons, *and such circumstances are not limited to proof that the defendant poses a serious risk either to obstruct justice or to intimidate or injure a prospective witness or juror*." *Demmler I*, No. 2:07-CR-209 (2), 2007 WL 3125308, at *3 (S.D. Ohio Oct. 23, 2007) (emphasis added). However, the cases referenced by the *Demmler I* court in support of this stray comment involve (f)(1) scenarios and do not support its application in this context. And *Demmler II*, resolving the motion to revoke the *Demmler I* detention decision, unequivocally applied an (f)(2)(B) lens to its danger analysis as noted above. Moreover, this Court in *Comberger* closely tailored its substantive danger-to-the-community analysis to the particular (f)(2)(B) obstruction and witness tampering conduct there alleged. Thus, with the issue squarely presented in this case, the Court takes the opportunity to clarify its prior position in conformity with the corresponding analysis and in accordance with the persuasive body of authority here discussed.

[6] The Court incorrectly referenced a preponderance standard in its opening remarks and, upon objection from Lamar, allowed briefing on the issue. Courts have recognized the lack of statutory clarity on this point. *See United States v. Madej*, No. 22-40009-TC, 2022 WL 715098, at *3 (D. Kan. Mar. 10, 2022) (acknowledging that "the standard of proof is unclear," with some courts applying preponderance and others a clear and convincing standard, but ultimately avoiding

8

of obstruction under subsection (f)(2)(B) must be shown by clear and convincing evidence to justify pretrial detention under the BRA.  [DE 11 at Page ID # 29; DE 12 at Page ID # 35].

Most courts appear to agree.  *See, e.g.*, *Leon*, 766 F.2d at 81; *United States v. Dodge*, 842 F. Supp. 643, 645–46 (D. Conn.), *aff'd as modified*, 846 F. Supp. 181 (D. Conn. 1994); *United States v. Dinunzio*, No. CRIM. 08-10094-WGY, 2008 WL 2148754, at *1 (D. Mass. May 20, 2008); *United States v. Robertson*, 608 F. Supp. 2d 89, 90 (D.D.C. 2009); *United States v. Zrallack*, No. 3:10CR68 (JCH), 2010 WL 2682527, at *3 (D. Conn. July 2, 2010); *United States v. Brown*, No. CRIM. 87-00296-04, 1987 WL 28095, at *2 (E.D. Pa. Dec. 14, 1987); *DeGrave*, 539 F. Supp. 3d at 198 (distinguishing between flight/preponderance cases and danger/clear and convincing cases, with obstruction falling into the latter set).  *But see United States v. Campos*, No. 19-CR-575-2 (FB), 2019 WL 7049953, at *1 (E.D.N.Y. Dec. 23, 2019); *United States v. Luton*, No. 19-CR-00098-CMA, 2019 WL 2272792, at *7 (D. Colo. May 28, 2019); *United States v. Mehanna*, 669 F. Supp. 2d 160, 160 (D. Mass. 2009).  The Court has not found persuasive, in-depth case analysis supporting the latter (ostensibly minority) view.  In particular, the clear convincing standard is necessary given the BRA's correlation of flight issues with a preponderance standard and danger issues, to include obstruction, with a clear and convincing standard.  And, in any event, the parties—permitted to supplementally brief the issue and develop the record on their respective positions—do not disagree.

For these reasons, the Court perceives the most precise framing of its BRA inquiry in this posture as evaluating whether the United States has shown by clear and convincing evidence that

---

deciding the issue because the proof in that case did not meet even the preponderance standard); *accord United States v. Curtis*, No. 2:20CR00043-RJS-CMR, 2021 WL 2117145, at *3–4 (D. Utah May 25, 2021).

no conditions could reasonably assure that Lamar would not endanger the community by posing a serious risk of attempting to obstruct justice if released. The Court tailors its analysis accordingly.

### III. BRA ANALYSIS

The Government's motion was originally premised on § 3142(f)(2)(B) in this case. Based upon the evidence currently before the Court and after full analysis of the danger factors outlined in § 3142(g), the Court holds that the Government has failed to establish that detention is required.

Evidence rules do not apply in the detention hearing context. 18 U.S.C. § 3142(f). The key is simply evidentiary reliability and accuracy. *See, e.g., United States v. Webb*, 149 F.3d 1185 (Table), No. 98-1291, 1998 WL 381686, at *1 (6th Cir. June 22, 1998). Given hearing informality, the Court properly considers a wide range of proof. The nature and quality of proof, though, impacts its probative value and ultimate weight in the detention calculus. The § 3142(g) factors drive the overarching analysis. *See DeGrave*, 539 F. Supp. 3d at 199 (considering the subsection (g) factors with specific reference to the Government's asserted obstruction concerns). There is no applicable detention presumption in this case, based on the allegations in the Complaint. *See* 18 U.S.C. §§ 3142(e)(2) and (3). With these principles in mind, the Court discusses each factor as it relates to the Government's theory that Defendant will endanger the community by attempting to obstruct justice in this case.

The Court first considers the "nature and circumstances of the offense charged[.]" 18 U.S.C. § 3142(g)(1). As this Court has remarked countless times, a charge of a conspiracy to distribute a controlled substance has clear danger connotations emphasized by Congress, but the Court notes here that the charged crime does not have equal inherent risk related to obstruction any more than any other criminal conduct. The Government repeatedly emphasized certain actions taken by Lamar to hide his criminal activities from law enforcement during the investigation, but

that conduct had nothing to do with the "nature and circumstance of the offense charged". Such actions could and often are taken by any criminal defendant in any case no matter the "nature and circumstance of the offense charged". The Court perceives a critical distinction between efforts to conceal ongoing criminal activity and an attempt to obstruct justice or otherwise interfere with the integrity of a judicial proceeding once instituted. *See, e.g.*, *DeGrave*, 539 F. Supp. 3d 184 at 199-200 (collecting cases); *United States v. Riley*, 21-cr-69 (D.D.C. Feb. 24, 2021) ("[W]hat (f)(2)(B) is really getting at is not just obstructive intent generally, but, rather, the risk that somebody's going to . . . obstruct or attempt to obstruct a judicial proceeding."); *cf. White*, 2021 WL 2155441, at *13 (analogously distinguishing, though in the flight context, "between someone being inclined to avoid being caught in the act and someone, once caught and brought before the court, being inclined to jump bail"). Thus, the Court finds that this factor does not support pretrial obstruction-danger detention.

The next consideration gauges "the weight of the evidence against the person." 18 U.S.C. § 3142(g)(2). In the Sixth Circuit, "[t]his factor goes to the weight of evidence of dangerousness, not the weight of the evidence of defendant's guilt." *Stone*, 608 F.3d at 948. Obstruction of a judicial process may constitute the sort of danger warranting pretrial detention under the BRA. Courts have concluded that even non-violent threats to the judicial process may constitute a sufficient danger in the BRA context. *See, e.g.*, *United States v. Richardson*, No. 2:11-CR-220, 2011 WL 5026456, at *6 (S.D. Ohio Oct. 21, 2011) (concluding that, under the particular circumstances of the case, "even the non-violent forms of obstruction of justice pose a sufficiently serious danger to the community such that pretrial detention [was] warranted"); *United States v. LaFontaine*, 210 F.3d 125, 134 (2d Cir. 2000) (noting its prior observation that detention may be "even more justified in cases of violations related to the trial process (such as witness tampering)

11

than in cases where the defendant's past criminality was said to support a finding of general dangerousness" and "reject[ing] [the defendant's] contention that her attempts to influence the testimony of . . . [witnesses] does not constitute the type of danger to the community that would support detention").

The evidence before the Court indicating that the community is in danger of a serious obstruction risk if Lamar were released includes (1) his prior efforts to conceal assets and criminal activity generally during the course of the alleged drug conspiracy; (2) his conduct during the federal arrest process; and (3) jail phone calls that Lamar made while detained between his initial appearance and detention hearing in this case. First, as discussed above, the Court finds that a defendant's past efforts to conceal his criminal activity and mask illicit proceeds do not necessarily suggest future serious risk of obstructing justice. And, to the extent this angle rests on an economic harm or dissipation of assets theory, the Court finds that it does not meaningfully inform the future obstruction analysis in this case. *See United States v. Madoff*, 586 F. Supp. 2d 240, 254 (S.D.N.Y. 2009) (engaging a hybrid obstruction and economic harm danger analysis and concluding that the "Government fail[ed] to provide sufficient evidence that any potential future dissemination of Madoff's assets would rise to the level of an economic harm cognizable under" the BRA).

Second, Lamar's conduct during execution of the search warrant and his arrest in this case offer possible insight into his future obstruction risk. The Government presented evidence that, as law enforcement approached his residence to execute the search warrant in this matter, Lamar refused to answer the door for officers executing the warrant, claiming that he had to make phone calls. Eventually officers had to forcibly enter the residence. When law enforcement contacted Lamar upon breaching the entrance, he was visibly covered in insulation and emerging from an attic area where law enforcement discovered a large amount of cash (over $1 million suspected as

drug proceeds) and other evidence from the concealed location in the residence. Multiple cell phones found on Lamar's person were badly smashed, despite being confirmed as operable only a short time before. Finally, Lamar attempted to break the window of the police car in which he was detained immediately following arrest.

These facts undoubtedly suggest some inclination to avoid criminal responsibility. However, in context, this conduct evinces more of a reflexive desire to avoid immediate detection as law enforcement approached than a propensity for future deliberate interference with an actual judicial proceeding. *Cf. United States v. Spates*, 162 F. App'x 592, 596 (6th Cir. 2006) (collecting cases in the obstruction-of-justice sentencing enhancement context and distinguishing between factual scenarios where a "defendant did not obstruct justice by fleeing from arrest because he did so spontaneously and without deliberation" and those where the defendant's "actions evidence a deliberate, calculated plan . . . to avoid criminal prosecution and possible conviction"). Given the qualitative difference between evasive conduct occurring at the time of arrest and later, calculated obstruction of a judicial proceeding, the Court perceives Lamar's arrest behavior as providing some evidence of future obstruction risk, but far from clear and convincing.[7] *See Madoff*, 586 F. Supp. 2d at 250 ("The statute, by its nature, is always looking forward. To be sure, the Court should consider past behavior in assessing the likelihood of prohibited behavior in the future, but the Government needs to show that there is a serious risk that these potential harms exist going forward.").

---

[7] The Court notes that it would likely view and weigh this conduct differently if it were permitted to undertake a general danger-to-the-community analysis beyond the limited formal obstruction concept.

The key proof in support of detention on an obstruction basis was Detective Cobb's detention hearing testimony about phone calls Lamar made to other individuals while incarcerated during the period between his initial appearance and detention hearing in this case. Detective Cobb advised that Lamar, from jail, communicated with at least one unidentified individual and directed that person to remove jewelry, including a specific watch that the Government has not yet located, and a hidden vehicle key from his residence or storage unit. Lamar likewise directed the person to retrieve the storage unit keys and return them to his family. This attempted destruction of evidence directly obstructs justice by interfering with an ongoing criminal prosecution against him and is precisely the sort of danger targeted by § 3142(f)(2)(B). However, the Government was unsure if the watch had not already been seized during its raid and was unsure what, if anything, was in the storage unit. The Government theorized that the jewelry could be drug proceeds and the storage unit could contain drug proceeds. Yet, the Government could not point to a single fact, despite its lengthy investigation into Lamar, supporting such a conclusion. Accordingly, though the evidence does indicate some risk that Lamar would direct others to remove or destroy evidence—thus obstructing the judicial proceeding—if released, the Court is not convinced that this information alone dictates a finding that Lamar poses a serious risk of obstruction by clear and convincing evidence.[8]

---

[8] The Government's presentation of proof alluded to two other obstruction theories, but the evidence, once fully explored at the hearing, failed to factually support them as (f)(2)(B) bases on the current record. First, via video evidence of Defendant's social media activity on Snapchat, the Government stated that Lamar may have paid for retained counsel for an individual also involved in the alleged drug trafficking conspiracy. Though the United States sought to imply that this was an attempt to interfere with that prosecution (and possibly Lamar's own future prosecution) by using ill-gotten funds to further the conspiracy conduct, the record lacks reliable evidence in support of that narrative. It is not currently clear precisely when Lamar posted these videos, nor, despite the fact that the Government confirmed that Lamar's alleged associate had retained counsel, is it clear whether Lamar actually advanced any funds for that purpose, or even if he had,

The third BRA factor is the history and characteristics of the defendant. *See* 18 U.S.C. § 3142(g)(3). The Pretrial Services Report ("PSR") [DE 10] reflects no information that would suggest a future risk of obstructing or attempting to obstruct justice. The sole instance of obstructive conduct is a dismissed state evidence tampering charge that was related to the instant federal indictment. [*Id.* at 5]. Lamar's other, relatively limited criminal history does not bear on obstruction risks. And, to the extent (g)(3)(A) references a defendant's financial resources and assets, it relates in the full BRA context to flight potential rather than obstruction risk through asset dissipation. The (g)(3)(A) and (B) factors offer no new information germane to the limited obstruction inquiry. The Court does not find that this factor counsels Lamar's detention.

The fourth and final factor is "the nature and seriousness of the danger to any person or the community that would be posed by the person's release." 18 U.S.C. § 3142(g)(4). Though obstruction need not include threats to other persons or actual violence to be considered dangerous for BRA purposes, such aggravating circumstances are nonetheless notably absent in this case. *Cf. LaFontaine*, 210 F.3d at 134 (collecting obstruction cases involving such aggravators but still concluding, based on the clear evidence of witness tampering in the case, that the defendant was a danger). Hence, the Court finds that the nature and seriousness of the obstruction risk in this case

---

where those funds originated. Moreover, all of this alleged conduct predated Lamar's arrest in this case and the institution of proceedings against him. The Court thus does not consider these factually undeveloped implications as supportive of an (f)(2)(B) obstruction theory. Second, the Government provided testimony that an individual associated with alleged co-conspirator Kristopher Lewis attempted, at Lewis's direction, to contact the source of supply in Detroit to alert that person to law enforcement's intervention in Kentucky. However, per the proof, that contact was unsuccessful. More critically, there is no evidence connecting this incident to Lamar in any way. The Court thus discounts those facts as indicative of a serious obstruction risk relevant to Lamar.

15

are not particularly heightened by any case circumstances, and this factor does not weigh in favor of detention.

For these reasons, consideration of the pertinent § 3142(g) factors in the (f)(2)(B) context does not support a finding by clear and convincing evidence that Lamar will endanger the community by posing a serious risk of obstruction if released. Nor, as a necessary corollary, does it support a finding by clear and convincing that no conditions could assuage such an asserted danger risk. The Court finds that detention is not warranted under the BRA on this specific, limited basis and on record presently before it. The Court finds that the conditions set forth in the accompanying Order, including home detention and GPS monitoring as well as restrictions on witness and co-defendant contact, will reasonably assure that the community is safe from any minimal risk of future obstruction that Lamar poses based on the current evidence of record. *See generally United States v. Chen*, 820 F. Supp. 1205, 1208 (N.D. Cal. 1992) (emphasizing that the BRA "does not seek ironclad guarantees" and requires only reasonable assurance).

### IV.  CONCLUSION

For the stated reasons, the Court **DENIES** the Government's oral motion for pretrial detention under 18 U.S.C. § 3142(f)(2)(B) and **RELEASES** Defendant pursuant to conditions as stated in a separate Order.

The parties may appeal this Order under the terms of 18 U.S.C. § 3145(a).

Entered this the 27th day of April, 2022.



Signed By:
Matthew A. Stinnett  MAS
United States Magistrate Judge